IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SOM SWAMY, on behalf of himself and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TITLE SOURCE, INC.,<br><br>    Defendant. | No. C 17-01175 WHA<br><br>**ORDER RE MOTION FOR CONDITIONAL CERTIFICATION AND FOR A PROTECTIVE ORDER** |

## INTRODUCTION

In this action for unpaid wages, plaintiff moves for conditional certification and for a protective order. Defendant opposes. For the reasons herein, Plaintiff's motion for conditional certification is **HELD IN ABEYANCE**. His motion for a protective order is **DENIED**.

## STATEMENT

Defendant Title Source, Inc., is a national real estate valuation company that works with lenders to evaluate properties and refinance loans. To complete property valuations, Title Source hires appraisers who work remotely and inspect properties in their geographic region (Dkt. No. 29 ¶¶ 26–27).

From May 2013 to May 2017, plaintiff Som Swamy worked as a Title Source appraiser, driving to various locations in the San Francisco Bay Area to conduct physical inspections of his assigned properties and write reports on them, which he forwarded to his manager electronically. Swamy alleges that he worked approximately fifty hours per week on average during his

employment with defendant, except during weeks when he was not working due to sick leave or vacation. Swamy further alleges that Title Source did not pay him or other appraisers overtime wages, and kept no records of their work hours (*id.* ¶¶ 28–33).

In April 2017, Swamy brought a putative collective action under the FLSA, alleging that he and other appraisers were misclassified as exempt employees and were not paid overtime despite working more than 40 hours per week. Additionally, Swamy brought a putative class action on behalf of a class of California appraisers alleging violations of California wage and labor laws (Dkt. No. 19).

Shortly after Swamy filed suit, Title Source's CEO, Jeff Eisenshtadt hosted four conference calls with Title Source staff appraisers during which he informed them of, and discussed this lawsuit with them (Dkt. No. 76 at 7). Swamy contends that the phone calls "were conducted for the purpose of intimidating and dissuading the potential Class Members from pursuing their FLSA rights," and seeks a protective order prohibiting Title Source from having any further communication with its staff appraisers regarding this lawsuit, and additionally seeks to send a corrective notice to all putative class members (*id.* At 8).

Swamy additionally seeks conditional certification of his FLSA collective action on behalf of all "staff appraisers" who he alleges were misclassified as exempt from overtime pay, and as a result are owed back wages (Br. at 8). He defines this putative collective as "all staff appraisers that worked for defendant at any time from three years prior to the date the Court authorizes notice to the present." He further seeks production of the names, dates of employment, last known addresses, phone numbers, dates of birth, and email addresses for each class member, and approval of his proposed opt-in notice (*ibid.*).

This order follows full briefing and oral argument.

**ANALYSIS**

**1. MOTION FOR CONDITIONAL CERTIFICATION.**

Swamy moves for conditional certification of a putative collective action. Title Source opposes arguing first that this Court lacks personal jurisdiction over those putative class members who are not California residents, and next contends that even in the event that personal

jurisdiction exists, certification should nevertheless be denied in the interest of efficiency, and to avoid confusion. Finally, Title Source argues that the putative collective members are not similarly situated, and conditional certification would therefore be inappropriate.

### A. Personal Jurisdiction.

In *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773 (2017), a group of plaintiffs brought a mass tort action against the defendant pharmaceutical company in California state court, alleging state claims. The Supreme Court held that the individual plaintiffs who were not residents of California, and did not claim any contact with the defendant in California could not exercise specific personal jurisdiction over the defendant (who likewise was not domiciled in California). *Id.* at 1787. *Bristol-Myers* did not address class or collective actions.

Title Source, however, now asks us to extend *Bristol-Myers*' holding to putative FLSA collective actions. This issue has not yet been addressed by our court of appeals, or, for that matter, any court of appeals. Indeed, only one court in this circuit has decided the issue with respect to class, though not FLSA collective, actions, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *3 (N.D. Cal. Sept. 22, 2017) (Magistrate Judge Nathaniel Cousins), finding *Bristol-Myers* inapplicable.[1]

This order finds that *Bristol-Myers* does not apply to divest courts of personal jurisdiction in FLSA collective actions. Unlike the claims at issue in *Bristol-Myers*, we have before us a federal claim created by Congress specifically to address employment practices nationwide. *See* 29 U.S.C. 202, 207(a). Congress created a mechanism for employees to bring their claims on behalf of other employees who are "similarly situated," and in no way limited those claims to in-state plaintiffs. 29 U.S.C. 216(b). Thus, our circumstances are far different from those contemplated by the Supreme Court in *Bristol-Myers*. The result of the rule Title Source urges would be that each putative collective member not residing in either the state where the suit is

---

[1] Two other decisions in this district confronted, but declined to decide whether *Bristol-Myers* applies to class actions since the issue was not yet necessary to decide and had not been briefed by the parties. *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *15 (N.D. Cal. Sept. 1, 2017) (Judge Beth Freeman); *In re Nexus 6p Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017) (Judge Beth Freeman).

brought, or a state where the defendant is domiciled, could not be part of the collective action. This would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights. This result is not mandated by *Bristol-Myer* and this order declines to extend *Bristol-Meyer* in the manner Title Source urges.

It is undisputed that Title Source is subject to personal jurisdiction in California to claims brought by Swamy, the sole named plaintiff in this action, which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action.

### B.     Two-Step Conditional Certification Process?

Title Source next argues that the Court should exercise its discretion to deny Swamy's motion to conditionally certify a class and issue an opt-in notice, instead reserving this decision for a later date.

Ordinarily, courts in this circuit apply a two-step process to certify FLSA collective actions. *See, e.g.*, *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015). At the first step, the issue is whether the putative collective should be given notice of the action. If conditional certification is granted, the second stage occurs when discovery is complete and the case is ready to be tried. The party opposing collective certification may then move for decertification, and the court engages in a more searching review. *Leuthold*, 224 F.R.F. at 466–67. Though widely applied in FLSA collective actions, nothing requires courts to use this two-stage certification/decertification approach.

Title Source offers two rationales for dispensing with the two-step approach in this action. *First*, it argues that mailing an opt-in notice on federal claims in late November, followed three months later with an opt-out notice in connection with final certification of a class action asserting state-law claims (should it be granted) will be confusing to recipients. FLSA collective members who have already decided not to opt in may believe that nothing more is required of them when they receive the opt-out notice (Opp. at 15–16). *Second*, Title Source argues that following the two-step process here may result in the pointless expenditure of resources should the class later be decertified (Opp. at 16–17).

4

Given that Swamy must file his motion for class certification concerning the state-law claims by January 18, to be heard on a 35-day track, Title Source proposes delaying any collective action certification until that date, at which time "the Court will be able to make a determination about the propriety of collective treatment under both Rule 23 and the FLSA in one fell swoop, based upon a full record" (*id.* at 17; *see* Dkt. No. 70 at 1). This, in turn, would allow for one joint notice that comprehensively informs putative class and collective members of their rights and responsibilities in this action (*ibid.*).

Swamy responds that Title Source's proposed plan is actually designed to further run the clock on the statute of limitations (Reply at 14). As he correctly points out, the statute continues to run until a claimant opts in to the suit by filing a written consent. 29 U.S.C. 256. As a result, Swamy observes, damages collective members would be entitled to diminish with each passing week.

This is indeed a significant concern. Accordingly, a November 1 order asked Title Source whether it would agree to toll the statute of limitations as to all potential opt-in plaintiffs from November 1 until a later certification notice was sent (Dkt. No. 89). Title Source agreed to do so (Dkt. No. 90). This agreement eliminates Swamy's sole expressed concern.

Given the late date at which Swamy has applied for conditional certification, and its proximity to the last day to seek class certification of his related California labor law claims, this order finds that no conditional certification or opt-in notice is necessary at this time and agrees that it will be cleaner and less confusing to send a single mailing in early 2018. Accordingly, Swamy's motion for certification of his putative FLSA collective is **HELD IN ABEYANCE**. Swamy shall renew his motion for certification of his collective action claims by no later than **JANUARY 18, 2018** or the date on which he seeks class certification for his putative California class action, whichever comes first.

2. **PROTECTIVE ORDER.**

In April 2017, shortly after this lawsuit was filed, Title Source's CEO, Jeff Eisenshtadt hosted four conference calls with Title Source staff appraisers during which he informed them

5

of, and discussed this lawsuit (Dkt. No. 76 at 7). While both parties agree that these calls took place, their interpretation of the calls differs.

Swamy contends that the phone calls "were conducted for the purpose of intimidating and dissuading the potential Class Members from pursuing their FLSA rights" (*id.* At 8). He highlights the fact that during the calls, Eisenshtadt informed staff appraisers that the lawsuit "has no merit, [and] that any person who joins this case could be responsible for paying Defendant's attorney's fees and costs" (*id.* at 6; Dkt. No. 76-1 ¶ 11 (Swamy Decl.) (Dkt. No. 79-1 ¶ 5 (Eisenshtadt Decl.)). He further claims that Eisenshtadt informed employees that they could be subject to sanctions should they fail to comply with any discovery burdens placed upon them (Dkt. Nos. 76-1 ¶ 11; 82 at 3). Based on the foregoing, Swamy moves for a protective order prohibiting Title Source from having any further communication with its staff appraisers regarding this lawsuit, and additionally seeks to send a corrective notice to all putative class members.[2]

Title Source opposes, arguing that the conference calls, held in early April, were intended to inform staff appraisers of the lawsuit rather than let them first hear of it through "online rumor mills" (Dkt. No. 79 at 7). Title Source argues that during these calls "Nothing misleading was said. No threats were made [and] [n]o retaliation was threatened" (Dkt. No. 79 at 7). Rather, Eisenshtadt "emphasized that staff appraisers were free to join this case" and that Title Source "would not discharge or in any way discriminate against anyone who complains about overtime or other wage matters, joins the case, testifies, or agrees to testify in the case" (*ibid.*; Dkt. No. 79-1 ¶ 5). Moreover, Eisenshtadt held an individual call with Swamy during which he assured Swamy that "he would not be retaliated against for filing this lawsuit" (*ibid*). Title Source admits that Eisenshtadt stated he believed the suit had no merit, and that staff appraisers joining the suit may have to pay out-of-pocket costs, but contends that these statements were not improper or intended to intimidate (*see* Dkt. No. 76-1 ¶ 11; Dkt. No. 79-1 ¶ 5). Finally, Title Source argues that he never said staff appraisers could be subject to sanctions merely for joining

---

[2] Though there were four calls, all covered the same information. The reason for the multiple calls was simply to accommodate the schedule of anyone who was unable to be on the others (Dkt. No 76 at 7).

the suit (as Swamy first appeared to argue), but instead explained that if they participated in the litigation they may have obligations to respond to discovery, and failing to do so could result in court sanction (*ibid.*).

Title Source contends that Swamy is seeking to distribute a "corrective notice" now, over six months after the calls took place, simply as a means to distribute an additional court-sanctioned notice and saturate plaintiffs with exposure to this lawsuit in hopes that they will opt in (*ibid.*). It argues that a protective order and attendant corrective notice are inappropriate because Swamy has failed to show that Title Source has abused its position, and prohibiting any further contact regarding this suit would be an unconstitutional restraint on speech that would put Title Source at a disadvantage in the litigation (Dkt. No 79 at 7–8).

District courts have "both a duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). This includes the authority to limit communications between parties and potential class members. Because limiting communications with a potential class member is a restraint on speech, however, any such limitation must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101.

Courts have, on occasion, limited pre-certification communications with potential class members after "misleading, coercive, or improper communications were made." *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. C 05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) (Judge Marilyn Patel). In *Mevorah*, for example, defendant's counsel contacted putative class members, ostensibly for discovery purposes, but in doing so gave a misleading explanation of the suit, which was likely to dissuade class member participation. *Id.* at *2–4. To correct any inaccurate impression, the court prohibited either party from engaging in pre-certification communications with potential class members, and ordered the parties to distribute a notice that briefly summarized the plaintiff's claims, the defendant's defense, and the potential outcome of the suit, should the plaintiff prevail. *Id.* at *5–6; *see also Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517–19 (N.D. Cal. 2010) (Judge Lucy Koh) (soliciting opt-out

7

forms from putative class member employees was coercive and required corrective notice, but not a communication ban).

Because the content of the communications at issue is largely undisputed, the question is whether the phone calls were misleading, intimidating, or otherwise improper. This order finds that they were not, and therefore no corrective statement or ban on communication is required. Title Source did not ask its employees to opt out of the suit, or offer a misleading interpretation of how the suit might affect them, which would tend to elicit opt outs. Rather, Title Source's CEO stated that the company planned to fight the suit, and believed it lacked merit, but that employees would not be punished or retaliated against for joining the suit (Dkt. No. 79-1 ¶ 5).

Eisenshtadt's representation that, should plaintiffs lose, they *could* be required to pay costs, was not misleading (*see* Dkt. No. 79-1 ¶ 5). Moreover, it is information that plaintiffs should consider when deciding whether or not to engage in litigation. Likewise, his comment that plaintiffs *may* have to participate in discovery, and a failure to do so could result in sanctions is accurate. There is no clear showing that he has misled staff appraisers. *Gulf Oil Co.*, 452 U.S. at 101.

Moreover, a corrective notice is unnecessary because, should plaintiff prevail on his certification motion in January, he will then have an opportunity to clarify the scope and purpose of the suit, and provide putative class members with other necessary information for them to make a decision about the suit. Accordingly, Swamy's motion for a protective order is **DENIED**.[3]

---

[3] On November 7, Title Source moved for leave to file a sur-reply, which it argued was necessary in light of new evidence, not available to Title Source at the time it filed its opposition to conditional certification (Dkt. No. 91 at 2). Specifically, Title Source took Swamy's deposition on October 25, and the deposition testimony allegedly contradicts statements Swamy made in his declaration (*ibid.*). The motion for leave is **GRANTED** to the extent that it offers new evidence based-upon Swamy's deposition, and this order has taken that evidence into consideration. Title Source's sur-reply, however, also adds arguments regarding personal jurisdiction (Dkt. No. 91-1 at 3–4). Nothing prevented Title Source from making these arguments in its opposition brief, and no intervening event has necessitated further briefing. Leave to file this portion of Title Source's sur-reply is therefore **DENIED** and additional arguments concerning personal jurisdiction are not considered herein.

8

**CONCLUSION**

Swamy's motion for conditional certification is **HELD IN ABEYANCE**. He shall have an opportunity to renew his motion at the same time he seeks Rule 23 certification. Swamy's motion for a protective order is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 10, 2017.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE