Mark D. Kemple (SBN 145219)
Adil M. Khan (SBN 254039)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
Email: kemplem@gtlaw.com; khanad@gtlaw.com

Peter S. Wahby (*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 95201
Telephone: (214) 665-3662
Facsimile: (214) 665-3601
wahbyp@gtlaw.com

Jeffrey Morganroth (*Admitted Pro Hac Vice*)
MORGANROTH AND MORGANROTH PLLC
344 N. Old Woodward Avenue, Suite 200
Birmingham, MI 48009
Telephone: (248) 864-4000
Facsimile: (248) 864-4001
JMorganroth@morganrothlaw.com

Attorneys for Defendant
TITLE SOURCE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOM SWAMY, on Behalf of Himself and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TITLE SOURCE, INCORPORATED,<br><br>Defendant. | CASE NO. 3:17-cv-01175-WHA<br><br>**DEFENDANT TITLE SOURCE, INC.'S OPPOSITION TO PLAINTIFF'S "SUPPLEMENTAL MOTION FOR CONDITIONAL CLASS CERTIFICATION UNDER SECTION 216(B)"**<br><br>Date: March 1, 2018<br>Time: 8:00 a.m.<br>Courtroom: 12<br>Judge: Hon. William Alsup |

# TABLE OF CONTENTS

I.   INTRODUCTION AND PROCEDURAL HISTORY ................................................................. 1

II.  SWAMY'S SECOND REQUEST FOR CONDITIONAL CERTIFICATION SUFFERS FROM THE SAME DEFICIENCIES AS HIS EARLIER REQUEST, AND MORE. ............................. 4

III. PLAINTIFF FAILS TO MEET THE STANDARD FOR FLSA CERTIFICATION. .................. 5

IV.  THE MOTION FAILS EVEN UNDER A MORE LENIENT STANDARD URGED BY SWAMY. ................................................................................................................................. 11

V.   FAIRNESS STRONGLY MILITATES AGAINST CERTIFYING THIS ACTION FOR COLLECTIVE ADJUDICATION, UNDER ANY STANDARD. ............................................. 14

VI.  CONCLUSION ........................................................................................................................ 16

**TABLE OF AUTHORITIES**

Cases

*Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111 (N.D. Cal. 2011) ............. 2, 3, 6, 7, 15

*Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119-BLF,
    2016 WL 3742342 (N.D. Cal. July 13, 2016) ................................................................. 7, 15

*Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA,
    2014 WL 12659905 (N.D. Cal. June 10, 2014) ................................................................. 15

*Guess v. U.S. Bancorp*, No. 06-07535-JF, 2008 WL 544475 (N.D. Cal. Feb. 26, 2008) .............. 9, 11, 12

*Hill v. R+L Carriers, Inc.*, No. C 09-1907 CW, 2011 WL 830546 (N.D. Cal. Mar. 3, 2011) ................ 15

*Mancuso v. Tauber*, No. CV12-10360-FMO(JCX), 2015 WL 12912321 (C.D. Cal. Sept. 21, 2015) ...... 6

*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015) ................................................... 4

*Reed v. Cty. of Orange*, 266 F.R.D. 446 (C.D. Cal. 2010) ................................................................. 2, 14

*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) ....................................................... 6

*Trinh v. JP Morgan Chase & Co.*, No. 07–CV–1666 W(WMC),
    2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ......................................................... 3, 9, 12

*Wallace v. City of San Jose*, No. 5:16-cv-04914-HRL,
    2017 WL 6017867 (N.D. Cal. Dec. 5, 2017) ................................................................ 7, 13, 14

*Wells Fargo Home Morg. Lit.*, 571 F.3d 953 (9th Cir. 2009) .............................................................. 3, 7

Rules and Regulations

29 C.F.R. § 541.200 ............................................................................................................................. 10

29 C.F.R. § 541.601 ........................................................................................................................ 10, 11

Fed. R. Evid. 401 ................................................................................................................................... 8

Fed. R. Evid. 403 ................................................................................................................................... 8

Fed. R. Evid. 602 ................................................................................................................................... 8

Fed. R. Evid. 608 ................................................................................................................................... 8

Fed. R. Evid. 801 ................................................................................................................................... 8

Fed. R. Evid. 802 ................................................................................................................................... 8

## I.   INTRODUCTION AND PROCEDURAL HISTORY

This is not Plaintiff Som Swamy's first attempt to certify a collective action under the Fair Labor Standards Act.  And as before, Swamy's motion should again be denied, on any of several independent grounds.

**First**, Swamy's renewed motion does not solve the problem that plagued his prior submission.  The Court will recall that Swamy filed his first motion for conditional certification back on September 19, 2017.  (Dkt. 73.)  Title Source opposed that motion on several grounds, including that the delayed timing of the motion and any resultant notices (if granted), coupled with Swamy's bid for Rule 23 certification, would cause undue confusion among recipients, rendering the discretionary "two-step" conditional certification process inefficient and prejudicial.  (Dkt. 77.)  The Court agreed, and rejected the two-step approach.  (Dkt. 94, at 5.)  Now, when the conflicting notices would be even more proximate, Swamy again argues for application of step one of the FLSA process.  But Swamy has not overcome the problems that the Court previously recognized were caused by his prior delay—namely, a bid for multiple, confusing, and simultaneous notices, requesting recipients to opt-in (FLSA) and opt-out (Rule 23) immediately, followed by another notice after a "second step" at some point down the road.  Accordingly, Swamy's renewed motion again seeking conditional certification should be denied.

**Second**, Swamy's request to have his motion judged by only a lenient first-step standard is inconsistent with this Court's Scheduling Order and the current status of this litigation.  Even putting aside the Court's comments in denying Swamy's prior step-one motion, the Court's Scheduling Order in no way contemplates yet another round of certification briefing filed after the deadline plainly stated therein—January 18, 2018.  (Dkt. 70.)  Indeed, Swamy filed this case almost one year ago on March 7, 2017, and, since that time, he has taken nine of his ten permitted depositions, propounded 27 interrogatories (two more than the Federal Rules allow), 70 document requests, and 32 requests for admission, and received from Title Source more than 52,000 pages of document/ESI production.

Moreover, Swamy has identified no additional discovery that he would need in order for this Court to decide the question of FLSA certification.  That is because there is none.  The Court now has a full certification record before it, and the issue of FLSA certification is ripe for its review in full.

In short, the parties have at all times conducted themselves on the basis that the certification motions would be due in January 2018 and would resolve all certification issues one way or the other, without the need for some later, unspecified certification discovery and proceedings. These issues are ripe for decision in full; there is no cause to bifurcate the FLSA decision, even as the Rule 23 decision is made.

**Third,** regardless of which "step" Swamy feigns to be on, he has failed to demonstrate that the putative class members are similarly situated for a host of reasons more fully discussed in Title Source's concurrent Opposition to Swamy's class certification motion (Dkt. 124). In fact, Swamy now concedes that he has no collective evidence that would allow for an efficient resolution of the merits of his claims on a classwide basis, and that this case hinges on eliciting individualized testimony from the putative class or collective action members:

> The facts on which Plaintiff will rely to prove the merits of his claims are Common to the Class [are]:… (4) testimony from Staff Appraisers that they worked overtime without being paid the necessary premiums as well as not being reimbursed for their work related expenses.

(Dkt. 109, at 6:25-26.) Put bluntly, "[i]t is ***oxymoronic*** to use [the FLSA collective action] device in a case where proof regarding each individual plaintiff is required to show liability." *Reed v. Cty. of Orange*, 266 F.R.D. 446, 462-63 (C.D. Cal. 2010) (rejecting FLSA certification) (emph. added).

Given his inability to prove the elements of his claims with common and collective proof, Swamy seeks to divert attention from those elements and toward an exemption defense (claiming the defense could be resolved uniformly—indeed, on summary judgment). He is wrong (for the reasons established in Title Source' concurrently filed certification opposition). But in any event, this argument misses the point. "[A]t this stage in the litigation, Defendants do not have the burden of proving that the exemptions apply to the class members. They will have that burden at trial. On the instant motion, it is Plaintiffs who have the burden of proving that they are similarly situated." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1134 (N.D. Cal. 2011). And Swamy has failed to meet that burden here. Moreover, contrary to Swamy's position, even a "uniform" exemption classification policy is insufficient to satisfy the plaintiff's burden, as "the Ninth Circuit recently made clear . . . [that] an analysis of what job duties each employee actually performed is more probative than an employer's

2   Case No. 3:17-cv-01175-WHA
DEFENDANT TITLE SOURCE, INC.'S OPPOSITION TO "SUPPLEMENTAL MOTION FOR CONDITIONAL CLASS CERTIFICATION UNDER SECTION 216(B)"

classification policy when considering whether plaintiffs are similarly situated." *Id.* at 1131 (citing *In re Wells Fargo Home Morg. Lit.*, 571 F.3d 953, 959 (9th Cir. 2009)).

Furthermore, having offered just one declaration with his first FLSA motion (his own cryptic declaration), now—after 10 months of litigation—Swamy adds <u>just one more</u>. This is plainly insufficient, as the 238 absent individuals, to whom Swamy claims he is similarly situated, worked across 36 states. (*See* Dkt. 73-1, at 2-3.) As a result, Plaintiff must provide "evidence, beyond [his] own speculative beliefs, suggesting that all . . .[employees] across the country, regardless of location or experience, receiv[ed] the same compensation and [were] required to work in the same manner." *Trinh v. JP Morgan Chase & Co.*, No. 07–CV–1666 W(WMC), 2008 WL 1860161, *4 (S.D. Cal. Apr. 22, 2008). Yet, Swamy introduces supporting declarations from alleged representatives in only two states—Texas and California. Even then, aside from ignoring the vast majority of the country, these declarations fail to include sufficient substantive allegations to show substantial similarity.

Indeed, apart from being a verbatim copy of Mr. Swamy's declaration—complete with each declarant's identical language concerning how he/she inspects properties when it is "snowing" (in Oakland, CA and Austin, TX)—Swamy's one other declarant testifies that she is not a putative member of the FLSA collective at all because she last worked at Title Source more than <u>three-years prior to the filing of this action</u>.[1] If this were not enough, there are additional reasons to doubt the credibility of this witness. For instance, when she signed her declaration, Ms. Bright's license to appraise had been – and still is – <u>suspended</u> by the Texas Appraiser Licensing and Certification Board due to "material misrepresentations and omissions" she had committed in the performance of her profession.[2] Perhaps these are the reasons why Swamy's motion never mentions or cites to this – his only other (non) percipient declarant – at all (and why his counsel sought to block her deposition). (Dkt. 115.) In short, and as before, Swamy offers no declaration from any person he seeks to represent as a means to carry his burden of proof. As such, and for many more reasons, Swamy fails to carry his burden even under the more lenient first-step FLSA standard that he urges.

---

[1] Dkt. 112-11, ¶ 2 ("I was formerly employed by Title Source, Inc. ('Title Source') as a Staff Appraiser from January 2012 to October 2013.")

[2] Kemple Decl., ¶ 28, Ex. 19, at 3.

**Fourth**, although Swamy claims that fairness supports his motion, the opposite is true. As discussed in the accompanying opposition to class certification, Swamy and his counsel are making a bid to overcome the individualized and fact-intensive questions that must be resolved on these claims by <u>compromising and limiting</u> the individual recoveries of the persons they seek to represent, based on proposed artificial limits and "caps" on those recoveries. This is highly improper, and flies in the face of this Court's Orders and basic notions of adequacy.

For these reasons, those discussed in the accompanying certification opposition incorporated in this opposition to Swamy's supplemental motion,[3] and as further established below, Swamy's second attempt to certify a collective action under the FLSA should be denied.

## II. SWAMY'S SECOND REQUEST FOR CONDITIONAL CERTIFICATION SUFFERS FROM THE SAME DEFICIENCIES AS HIS EARLIER REQUEST, AND MORE.

Swamy yet again asks this Court to employ a "two-step" process. But Swamy's request to certify a Rule 23 *opt-out* class at the same time as a conditionally certified FLSA *opt-in* class continues to render this request inefficient and prejudicial. As courts around the country are increasingly recognizing, conditional certification followed by decertification – particularly when coupled with a Rule 23 action covering the same persons – can lead to a waste of judicial resources and a morass of unmanageable issues. Indeed, Swamy's ground-hog day request for conditional certification would still result in the same confusion that this Court sought to avoid when it rejected his first bid for conditional certification: "Given the late date at which Swamy has applied for conditional certification," multiple mailings would be "confusing." (Dkt. 94, p. 5.) *See also Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 601 (E.D. Cal. 2015) (acknowledging "confusion to class members and possible jurisdictional concern presented by a FLSA opt-in class and a Rule 23 opt-out class"). The Court rightly held that FLSA certification should be decided in this case on the same track with Rule 23 class certification—not on separate tracks that would lead to confusion. (Dkt. 94, p. 5).

Now, even more time has passed, and the waste of judicial resources and risk of confusion inherent in Swamy's proposal for a "two-step" process are no less a problem. In fact, they are worse.

---

[3] Likewise, Swamy incorporates his class certification motion into his supplemental FLSA motion. (*See* Dkt. 110, at 7:21-24.)

Swamy now requests that inverse notices (opt-in and opt-out) be sent at <u>precisely</u> the same time. As before, no lay person can be expected to understand and reconcile the various opt-in, opt-out, and do-nothing options. The two-step process is simply inappropriate in the circumstances presented here, and Swamy offers no justification for the Court to reconsider—let alone change—its prior, correct ruling in this respect.

Further, as discussed above, this Court's Scheduling Order plainly contemplates that all certification issues would be resolved at this time. As a result, and, as discussed, the parties have engaged in extensive discovery, and prepared themselves for the simultaneous resolution of the Rule 23 and FLSA certification decisions. This case is almost a full year old on the docket, and the record is well-developed. Specifically, (i) the parties have conducted 11 depositions—9 of which were taken by Swamy and count towards his 10-deposition limit, (ii) Swamy has propounded 27 interrogatories (two more than the maximum), 32 requests for admission, and 70 requests for production, and (iii) Title Source has thus far produced <u>over 52,000 pages</u> of documents, which include both traditional and electronic discovery. (Kemple Decl., ¶ 30.) Indeed, Swamy is at the end of his allowed depositions, has already exceeded the number of interrogatories allowed under the Federal Rules of Civil Procedure, and has propounded dozens of other written discovery requests and received tens of thousands of pages of production. It is unsurprising then that Swamy has identified no additional discovery that he would need in order for this Court to decide the question of FLSA certification. Indeed, unless Plaintiff's counsel intends to stipulate to inadequacy concerning his representation of a Rule 23 class, he cannot claim that Plaintiff is not prepared at this time for resolution of the full FLSA certification question.

For each of these reasons, Plaintiff's suggestion that the FLSA analysis now be limited to step one only—at the same time the Court resolves a full class certification motion under Rule 23—makes no sense. Indeed, it merely serves as a tacit <u>concession by Plaintiff that he has failed to make the step-two showing</u>. For these reasons too, the FLSA certification decision should be resolved now and in full.

### III. PLAINTIFF FAILS TO MEET THE STANDARD FOR FLSA CERTIFICATION.

Essentially acknowledging that he must now make the full FLSA showing, Plaintiff has briefed his FLSA request as part of his Rule 23 motion and incorporated his argument in his shell FLSA brief. (Dkt. 110, at 7:21-24.) He is right to do so, as in this context the standards are essentially the same. *See*

*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) ("Under the second approach, district courts have incorporated into § 216(b) the requirements of current Federal Rule of Civil Procedure 23 . . . '[i.e.] numerosity, commonality, typicality, and adequacy of representation and 23(b)(3)'s requirement that common questions of fact predominate . . . .") (cit. omitted); *Mancuso v. Tauber*, No. CV12-10360-FMO(JCX), 2015 WL 12912321, at *4 (C.D. Cal. Sept. 21, 2015) (when combining the two-step FLSA certification question to one step, courts "evaluat[e] the FLSA collective action in terms of Rule 23's class certification requirements").

Swamy has not met this standard. Though Title Source will not repeat all arguments made in its class certification opposition, we again note that Swamy has not demonstrated that this action is appropriate for collective adjudication. Indeed, Swamy concedes that individualized testimony of each putative class member would be required to establish liability on the unpaid wages claims:

> The facts on which Plaintiff will rely to prove the merits of his claims are Common to the Class [are]:... (4) ***testimony from Staff Appraisers that they worked overtime without being paid the necessary premiums as well as not being reimbursed for their work related expenses***.

(Dkt. 109, at 6:25-26 (emph. added).)

Having conceded in his Rule 23 motion that the wage claims require individualized inquiries on the initial question of liability, Swamy's FLSA motion seeks to sidestep this fatal problem by focusing principally on two other arguments. Neither helps him.

First, Swamy spends much of his brief focusing on the exemption defense, and arguing about the uniform classification of Title Source ESAs as exempt. But that misses the point. Initially, when FLSA certification is at issue, an exemption defense is not the focus, as the Court must instead consider plaintiff's ability to prove his prima facie case with common evidence at trial. *Beauperthuy*, to which Swamy cites throughout his brief, illustrates the point. In that case, the plaintiffs—like Swamy here— argued that the employer "produced insufficient evidence that any of the class members qualified for any of the exemptions at issue." *Beauperthuy*, 772 F. Supp. 2d at 1134. The court rejected that argument, holding that the employer did not have the burden at this stage of proving the exemption:

> This argument fails . . . [because] at this stage in the litigation, <u>Defendants do not have the burden of proving that the exemptions apply to the class members</u>. They will have

that burden at trial.  On the instant motion, it is Plaintiffs who have the burden of proving that they are similarly situated.

*Id.* (emphasis added).  Accordingly, the *Beauperthuy* court decertified an FLSA collective action.  *Id.*; *see also Wallace v. City of San Jose*, No. 5:16-cv-04914-HRL, 2017 WL 6017867, at *6 (N.D. Cal. Dec. 5, 2017) (decertifying FLSA collective action based on individualized inquiries regarding prima facie claim, and without determining whether affirmative defenses involved individualized or common issues).  Simply, Swamy has the burden to establish that a collective action is appropriate.  He cannot meet that burden.

Swamy also places great reliance in the fact that the ESA position is uniformly classified as exempt.  That reliance is again misplaced.  As the authority he cites holds, a "uniform 'blanket' classification policy that categorize[s] each [employee] as exempt from overtime based solely on the [employee's] job title" does not amount to an admission that all the employees with the same job title "performed the same duties and were similarly situated."  *Beauperthuy*, 772 F. Supp. 2d at 1131.  Rather, and as "[t]he Ninth Circuit recently made clear . . . an analysis of what job duties each employee actually performed is more probative than an employer's classification policy when considering whether plaintiffs are similarly situated."  *Id.* (citing *In re Wells Fargo Home Mortgage Litigation*, 571 F.3d 953, 959 (9th Cir. 2009)); *see also Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119-BLF, 2016 WL 3742342, at *8-9 (N.D. Cal. July 13, 2016) (decertifying class; holding that "relying on their shared Job Title and [employer's] blanket exemption policy fails to show that they are similarly situated for several reasons.... The Court finds Plaintiffs' reliance on the uniform exemption policy equally unpersuasive.").

Here, Swamy does not cite or discuss any relevant, corroborating declarations from other employees within the putative FLSA collective action that say what they actually did and how they did it.  Indeed, even with the additional four months since his last FLSA motion, Swamy has managed to procure only one other declaration, from former ESA Kathy Bright. (Dkt. 112-11.)  But Ms. Bright in no way suggests that she was "similarly situated" to Swamy, let alone to other ESAs he hopes to represent, as she declares that she worked at Title Source at a time that is not within the collective action period.  (*Id.* ¶ 2 ("I was formerly employed by Title Source, Inc. ('Title Source') as a Staff Appraiser from January 2012 to October 2013.").)  Further, as of the date that Ms. Bright signed her

declaration, her appraiser's license had been suspended by her licensing authority (the Texas Appraiser Licensing and Certification Board) because, as that Board found, Ms. Bright engaged in "material misrepresentations and omissions" in the performance of her profession. (Kemple Decl., ¶ 28, Ex. 19 at 3 (emph. added).) Those two strikes aside, the declaration that Ms. Bright apparently signed (though the signature on her suspension looks nothing like the signature found on the Bright declaration that Swamy has submitted to this Court[4]), is a nearly verbatim copy of Swamy's declaration. Indeed, only a handful of words are different. Each includes, for example, an identical discussion of how he/she supposedly handles inspections when it is "snowing" (¶ 7 in each). Though we cannot tell who copied from whom (though, we note, Swamy's is the later-signed of the two), "snow" in Oakland, where Swamy appraises, is a rare event (and snow in Austin is not exactly common). In short, these declarations are completely lacking in credibility. Ms. Bright's declaration is irrelevant; it should be deemed inadmissible pursuant to Fed. R. Evid. 401 and 403 and excluded under Fed. R. Evid. 602 (no personal knowledge within relevant timeframe) and Fed. R. Evid. 608 (character for untruthfulness).[5]

To be sure, Swamy had plenty of time and opportunity to try to find others to support his claims here. For example, Swamy's Texas counsel sent a mass solicitation to appraisers in California, but said solicitation apparently turned up no one other than Swamy. (Dkt. 25-1, Ex. A (counsel's public records request for contact information for California registered appraisers); Dkt. 25-2, Ex. A (counsel's solicitation).) Swamy's Texas counsel also used public records requests to obtain the contact information of licensed appraisers in at least four other states, and, during the course of discovery in this action, Title Source identified who on those lists were current or former Title Source ESAs. (Morganroth Decl., ¶¶ 2-3.) Yet, Swamy's counsel apparently could not turn up any other current or former team member to submit a declaration – other than Ms. Bright.

---

[4] *Compare* Dkt. 112-11 (Bright Decl.), at 4, *with* Ex. 19, at 7.

[5] In addition, the verbatim statements in the declarations from Swamy and Ms. Bright that (1) "there were weeks when I worked more than 40 hours and pay periods when I worked more than 80 hours" (at ¶ 12 of each), and (2) that "I have communicated with other Staff Appraisers and I know that my job duties are the same as the others" (as well as the balance of that paragraph ¶ 17 in each declaration), should be ruled inadmissible as (i) lacking foundation (particularly in the case of Ms. Bright, who does not say she worked for Title Source during the FLSA period), (ii) conclusory, and (iii) based on hearsay. *See* Fed. R. Evid. 602, 801, 802.

Further, though Swamy has retained an "expert" in this case—Mr. Breshears, whose declaration is discussed in the Rule 23 certification opposition—he offers no opinions and no methods concerning ESAs outside the State of California. (Ex. 11, Breshears Depo. at 120:20-121:4, 121:23-122:6.)

Rather than coming forth with *actual* evidence of what other ESAs actually do to satisfy his burden for justifying collective treatment, Swamy's motion is based on two shaky legs. The first is his misreading of the job description. But as the case law shows, uniform job titles and job descriptions is just the beginning of the inquiry, not the end, and they certainly are not dispositive on the issue of collective treatment. In fact, when faced with nothing more, courts routinely deny conditional certification under the first-step analysis, and as discussed above, this case is well past that; we are at step two, which poses a *higher burden*. *See*, *e.g.*, *Trinh v. JP Morgan Chase & Co.*, No. 07–CV–1666 W(WMC), 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) (denying FLSA certification where plaintiffs presented nothing more than their own declarations and "had essentially the same job description"); *Guess v. U.S. Bancorp*, No. 06-07535-JF, 2008 WL 544475, at *3 (N.D. Cal. Feb. 26, 2008) (denying certification when plaintiff presented nothing more than "his own declaration" and counsel's declaration discussing job descriptions).

Plaintiff's reliance on the deposition of Title Source's Chief Operating Officer, Brian Hughes, is similarly misplaced. To understand why, context matters. Back in May 2017, the Court permitted a two-hour deposition of Mr. Hughes "on the narrow issue of Title Source's factual assertions made within its Motion to Transfer."[6] As the quoted excerpt in the motion makes plain, however, much of Plaintiff's questioning had nothing to do with the venue-related topics, and all he accomplished in doing was to confuse a lay witness into testifying that he understood Plaintiff's complaint to be asserting claims on behalf of 238 other staff appraisers. Furthermore, the quoted excerpt merely shows some surface-level questioning about what staff appraisers do; *Mr. Hughes was not asked for an exhaustive list* of every job duty that every staff appraiser might perform, so Plaintiff's spin on this testimony is pure overreach. Indeed, when Plaintiff asked broader questions to the right people, he obtained much

---

[6] Dkt. 30 (Pl.'s Mtn. for Continuance to Conduct Venue Discovery) at 3-4; Dkt. 49 (Order permitting "two-hour deposition" in response to Plaintiff's motion for limited venue-related discovery).

broader answers.[7]  This deposition testimony is consistent with the declarations filed by several ESAs from across the country that further confirm the variability in their job duties (as well as their disagreement with Plaintiff's positions in this case).  (*See* Ferris Decl. ¶ 7; Putnam Decl. ¶¶ 12-13; Long Decl. ¶ 6; Byrne Decl. ¶¶ 6-7.)  In sum, Plaintiff's out-of-context soundbite approach does not – and cannot – establish the legal conclusion that all staff appraisers across the country are "similarly situated" for purposes of FLSA certification.

In sum, for the reasons set forth in this supplemental brief, and the reasons set forth in the concurrently filed certification opposition, Swamy fails to meet his certification burden under the FLSA.  His motion should be denied.

Further, as outlined in Title Source's opposition to class certification, Swamy is also subject to unique defenses which render him atypical of other ESAs.  (Dkt. 124, Section VI.)

Moreover, Swamy cannot claim that he is similarly situated to about half of the ESAs he seeks to represent, because unlike those ESAs,[8] Swamy's total annual compensation at all times during the proposed class period was below the threshold for the highly compensated employee exemption (29 C.F.R. § 541.601).  Unlike the administrative exemption, which turns on whether the employee's "primary duty is the performance of office or non-manual work *directly related to the management or general business operations of the employer or the employer's customers*" (29 C.F.R. § 541.200), the highly compensated employee exemption merely asks whether "the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee," and whether his or her "primary duty includes performing office or non-manual work" (29 C.F.R. § 541.601(a), (d)) but without reference to whether such office work is "directly related

---

[7] Ex. 10 at 64:12-15; *see also* Ex. 17, Andrew Lusk Depo., 55:21-56:3 (explaining that Title Source had different "job duties and the way that they did their job was different in important ways"); Ex. 12, Brocker-Querio Depo., 289:3-21 (software design and testing), 290:18-1291:10 (same), 198:198:18-21 (reviewing protocols of non-employee Fee Appraisers), 200:10-201:1 (same), 205:8-206:10 (beta testing); Ex. 15, Romero Depo., 160-167 (beta testing and other developmental activities); Ex. 16, Stickney Depo., 83:5-84:23 (creating new app), 111:7-112:18, 114:10-116:18 (beta testing), 118:16-119:13  (pilot programs for overall appraiser workforce).

[8] Brocker-Querio Decl., ¶ 2.

to the management or general business operations of the employer or the employer's customers." Simply, these tests are very different. They measure different individualized duties and activities, over different time periods. The latter – the highly compensated employee exemption – is met where an employee "customarily" or "regularly" performed at least one exempt task, such as quality control, including reviewing outside appraisers' work, or auditing. (*See* Ex. 8, job description ("Maintaining and improving Company's appraisal quality"; "Review[ing] and analyz[ing] appraisal reports of outside fee vendors for efficacy of their value conclusions, adherence to technical appraisal theory and methodology governing residential real property, and adherence to the Uniform Standards of Professional Appraisal Practice"; "Assist the VP of Collateral Risk and Chief Appraiser with ongoing audits."); *see also* Ex. 12, Brocker-Querio Depo., 296:14-298:1.) This is a different and easier exemption to meet, and by design: "[a] high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." 29 C.F.R. § 541.601(d). As a result, this exemption not only requires an individualized analysis of each ESA's varying duties, but it is also individualized on different questions than the exemption to be measured concerning Swamy.

Here, unlike Swamy, half the ESAs Swamy seeks to represent meet the highly compensated employee compensation threshold, and therefore can be evaluated under it, whereas Swamy cannot. For this reason too, Swamy has not shown himself to be "similarly situated," much less even as to the *defenses* applicable to him.

**IV.  THE MOTION FAILS EVEN UNDER A MORE LENIENT STANDARD URGED BY SWAMY.**

Even if this Court were to apply the more lenient first-step standard (which the Court already considered and denied), Swamy still falls short of satisfying his burden. To carry that burden, he would be required to "bear the burden of demonstrating a 'reasonable basis' for [his] claim of class wide [liability], that is, detailed allegations supported by affidavits which successfully engage Defendant's affidavits to the contrary." *Guess v. U.S. Bancorp*, No. 06-07535-JF, 2008 WL 544475, at *2 (N.D. Cal. Feb. 26, 2008) (emph. added).

In *Guess*, the court denied a motion for conditional certification because the "Plaintiff ha[d] failed to offer evidence from any potential class member (other than himself) suggesting that persons employed in the various sales positions he identified [were] similarly situated." *Id.* at *4. Similarly, in *Trinh v. JP Morgan Chase & Co.*, No. 07–CV–1666 W(WMC), 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008), because the plaintiffs failed to submit corroborating declarations from other members of the putative collective action, the court held they "failed to provide the modest factual showing that they and the broad class they wish to represent are similarly situated with respect to job requirements and pay provisions." *Id*. at *4.

Swamy's motion fails for this same reason. As the Court may recall, Swamy declared, in his initial declaration in support of his first motion for conditional FLSA certification, that he had spoken with other ESAs and that they would be interested in joining this lawsuit. (Dkt. 73-3, ¶ 9.) That was in September 2017, when this case had been pending for six months and Swamy had successfully delayed Title Source's opportunity to depose him on these allegations. Since that time, at deposition, Swamy has admitted he does not know the hours worked by other ESAs, their schedules, and whether they worked more than 40 hours in a week or more than 8 hours in a day. (Ex. 10, Swamy Depo., 80:8-18, 225:16-226:5, 310:10-22.) Furthermore, Swamy has not observed other ESAs at work, has no knowledge of their methods or hours or the state standards that govern their work (*id*. 108:1-112:5, 160:15-161:11, 179:18-181:11, 183:7-10, 340:21-341:25), and has not seen other ESAs' employment agreements, reimbursement requests or pay stubs (*id*. 137:15-138:4). Nor has Swamy spoken with other ESAs about joining his lawsuit. (*Id*. 280:2-13).

Even today, four months later after his prior motion, Swamy still has no corroborating testimony from any other ESA. He offers only the declaration of Ms. Bright – discussed above – though he never cites to it (we would suggest, as discussed above, for good reason). Thus, as in *Guess* and *Trinh*, Swamy fails to offer any relevant corroborating evidence to support his certification bid, and his motion should fail. Indeed, the evidence submitted by Title Source, including deposition testimony and declarations from putative collective action members affirmatively demonstrates that Swamy's idiosyncratic view of the ESA position is simply incorrect.

1  Moreover, Swamy has not explained how this case makes sense as a collective action to resolve the merits of the elements of the claims.  Nor could he.  As explained in the accompanying Opposition to class certification, the liability question for the federal wage and FLSA "kickback" reimbursement claims are rife with individualized inquiries that would predominate at trial – including (i) the precise hours worked in each week in which an expense is claimed, (ii) the compensation earned in that week, (iii) whether the expenses was personal, (iv) whether the expense was reasonable under the circumstances, and (v) whether the expense was necessary under the circumstances.  (See Dkt. 124, at Sections. IV.A. & B.)  That too renders certification under the FLSA inappropriate.

To illustrate, in *Wallace v. City of San Jose*, firefighters alleged they were denied payment of overtime wages due under the FLSA.  *See* 2017 WL 6017867 at *4.  In support of their bid for certification, the firefighters contended that the city's payroll system had incorrectly calculated overtime in certain situations, and that any differences between employees would be a simple matter of individualized damages.  *Id.* at *3.  The district court rejected that argument, explaining that "whether any employee might have been underpaid in the manner alleged by plaintiffs depends on the vagaries of their particular work schedules, which differs across the class." *Id*. at *4, *6.  Accordingly, the court decertified the FLSA action, holding:

> **Resolution of liability** and damages issues would essentially require individualized inquiries as to each opt-in to determine whether they worked the "very specific situation" identified by [lead plaintiff] and whether any have actually been injured in the way plaintiffs claim.  Each plaintiff's case would require consideration of different background facts based on each employee's work activities in any given pay period.  Thus, representative testimony would not accurately capture the situation of each individual plaintiff.

*Id*. at *7 (emphasis added).  In doing so, the court also criticized the named plaintiffs for presenting "no evidence that any of the 500-plus opt-ins ever worked the 'very specific situation' identified . . . or that any opt-in was underpaid." *Id*. at *4.

Likewise, as established in detail in Title Source's concurrently filed Opposition, Swamy's claims are inherently tied to the vagaries of each individual ESA's personal experience—including the number of hours worked, the "reasonableness" and "necessity" of certain expenses, and the allocation of those expenses between personal and work-related uses.  Swamy even concedes the point, admitting that he would have to put on individualized testimony of other ESAs to establish the claims.  (Dkt. 109,

Motion at 6:25-26.)  Thus, as in *Wallace*, each opt-in plaintiff's case "would require consideration of different background facts based on each employee's work activities in any given pay period," thereby making collective action treatment inappropriate.  2017 WL 6017867, at *7.

*Reed v. County of Orange*, 266 F.R.D. 446, 462-63 (C.D. Cal. 2010), provides another example of why Swamy's bid is doomed to fail.  In *Reed*, the district court decertified an off-the-clock and related claims, holding that a need to hold mini trials on liability questions made it inappropriate to resolve the claims of many in one collective action:

> Multiple, individual trials on the merits is the antithesis of a collective action, which is what will occur in this case if it continues collectively.  ***It is oxymoronic to use such a device in a case where proof regarding each individual plaintiff is required to show liability.***

*Id.* (citations and quotations omitted; emphasis added).  For the same reasons, it would be "oxymoronic" here to use the FLSA collective action device where Swamy already concedes he must put on the individualized testimony of other ESAs just to try to establish the prima facie elements of the claims.

To sum it up, Swamy does not know whether others actually are similarly situated, and he failed to enlist anyone else saying he/she is in the class to join him.  Nor does Swamy establish that resolving the claims of many in this one action makes sense.  To the contrary, the undisputed record establishes it would be "oxymoronic" to proceed as a collective action here.

## V.  FAIRNESS STRONGLY MILITATES AGAINST CERTIFYING THIS ACTION FOR COLLECTIVE ADJUDICATION, UNDER ANY STANDARD.

Finally, Swamy argues "fairness" as a factor to support his motion.  Any consideration of "fairness" militates the opposite direction toward denying Swamy's motion, for several reasons.

First, as discussed above and in Title Source's concurrent Opposition, adjudicating these claims would require individualized mini trials.  There is nothing fair about conditionally certifying something that is bound to later be decertified.  Indeed, an increasing number of litigants expend tremendous resources on cases that have been conditionally certified, only to have them later *de*certified and

resolved by dispositive motion or settlement.⁹  This results in great waste of resources for opt-in plaintiffs that are then forced to pursue their claims on an individual basis.

Second, as also detailed in Title Source's concurrent Opposition, Swamy and his counsel seek to take shortcuts to obtain certification, which would compromise and limit the recoveries of the persons they would claim to "adequately" represent.  This presents an inherent conflict, as Swamy and his counsel seek certification as a means to garner fees, while the claims of others are sacrificed for that gain.  (*See* Dkt. 124, Section V.)

Third, as detailed in Title Source's concurrent Opposition, neither Swamy nor his counsel have proven to be adequate representatives in any event.  In fact, Swamy does not know the basic contours of this case, and does not appear to understand his role as a putative stand-in for other allegedly aggrieved employees.  Cementing the point, when asked at deposition if he seeks to represent the class of persons (about whom he has virtually no knowledge), Swamy's response was: "I don't know."  (Ex. 10, at 280:14-17.)

As for Swamy's counsel, having spent almost one year litigating this case, counsel now claims that Plaintiff still has not taken the discovery they need to bring this motion, and the only other declarant they enlisted is not even someone they claim is a putative class member.  (*See* Section II, *supra*.)  The inadequacy also extends to basic procedure.  Namely, despite knowing their filing deadline several months in advance, they still waited until the 11th hour—literally—to file the certification motions and, as a result, they blew the deadline for filing the supporting declarations and exhibits (filed after midnight).  (*See* Dkt. 111, 112.)  Other ESAs would do better on their own.

To that end, this is not a situation where the potential claims are too small to incentivize individual actions.  To the contrary, based on Swamy's allegations, his claims would be worth

---

⁹ *See, e.g.*, *Benedict*, 2016 WL 3742342, *8-12 ("Having determined that the evidence shows wide variation in the responsibilities and tasks of Collective Members, the Court finds that a single trial for all Members would not only be unmanageable and inefficient, but it would also fail to serve the purpose of the FLSA . . . ."); *Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 12659905, *1 (N.D. Cal. June 10, 2014) (FLSA class decertified by stipulation to facilitate resolution of individual claims); *Beauperthuy*, 772 F. Supp. 2d 1111, 1127-28 (N.D. Cal. 2011) (decertifying FLSA collective action because "the need for such individualized inquiries would make proceeding by representative testimony impracticable" and "proceeding collectively would be 'unmanageable, chaotic, and counterproductive.'"); *Hill v. R+L Carriers, Inc.*, No. C 09-1907 CW, 2011 WL 830546, *4 (N.D. Cal. Mar. 3, 2011) ("lack of similarity ... precludes adjudication of this case as a FLSA collective action").

approximately $140,000, plus fees and costs.[10] (Kemple Decl., ¶¶ 2-10.) Thus, in all practical terms, no "pooling" of resources is really needed. Moreover, as previously stipulated, the statute of limitations for claims of other putative opt-in plaintiffs has been tolled pending resolution of Swamy's FLSA motion. (Dkt. 90, Dkt. 94.) Thus, ESAs have an opportunity to pursue their individual claims—untethered from Swamy and his counsel here.

## VI. CONCLUSION

Under any standard, Plaintiff has failed to justify collective treatment of his claims. His motion for conditional certification under the FLSA should be denied.

Dated: February 8, 2018

GREENBERG TRAURIG, LLP

By: _____
Mark D. Kemple
Attorneys for Defendant
Title Source, Inc.

---

[10] Title Source denies liability, but that is not the point here. Rather, the point is simply that, according to Swamy's allegations, each putative opt-in plaintiff has enough incentive to pursue his or her own individual claims, without being tied to Swamy and his counsel in this case.