IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SOM SWAMY, on behalf of himself and on behalf of all others similarly situated,

    Plaintiff,

  v.

TITLE SOURCE, INC.,

    Defendant.

No. C 17-01175 WHA

**ORDER GRANTING IN PART CLASS CERTIFICATION AND DENYING FLSA CONDITIONAL CERTIFICATION**

## INTRODUCTION

In this employment class action, plaintiff moves for conditional certification of a FLSA collective action and for class certification under FRCP 23(b)(3). For the reasons stated below, plaintiff's motion for class certification is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion for conditional certification under the FLSA is **DENIED**.

## STATEMENT

Defendant Title Source, Inc. — a national real estate valuation company that works with lenders to evaluate properties and refinance loans — hired staff appraisers who worked remotely and inspected properties in their geographic region. Appraisers chose their own work schedule and also selected the type and location of appraisal to complete. They all had the same primary duties to schedule an inspection with the homeowner, inspect the property, identify comparable properties, and complete standardized valuation reports.

Title Source uniformly classified its staff appraisers as exempt employees and did not keep records of their hours worked. Appraisers completed a minimum of eight appraisals per pay period, but could work more if they so wished. And, although appraisers earned a base salary, they received additional compensation if they produced above the eight-appraisal minimum.

From 2013 to 2017, plaintiff Som Swamy worked as a Title Source appraiser in the San Francisco Bay Area. Swamy did not keep track of the hours he worked. He testified during his deposition, however, that there were some weeks where he worked more than 40 hours.

Swamy filed this putative class and collective action in March 2017. In September 2017, Swamy moved for conditional certification of his FLSA collective action. At the suggestion of Title Source — and out of concern that sending multiple notices to class members would cause unnecessary confusion — Swamy's motion was held in abeyance pending his anticipated motion for class certification under FRCP 23 (Dkt. Nos. 1, 73, 94).

Swamy now renews his motion for conditional certification of a FLSA collective action and moves for class certification under FRCP 23(b)(3) (Dkt. Nos. 109–10). This order follows full briefing and oral argument.

**ANALYSIS**

**1. MOTION FOR CLASS CERTIFICATION.**

Pursuant to FRCP 23(a), for a named plaintiff to obtain class certification, the court must find: (1) numerosity; (2) common questions of law or fact; (3) typicality; and (4) adequacy of the class representatives and counsel. The proposed class must also be ascertainable. In addition to satisfying FRCP 23(a)'s prerequisites, the party seeking class certification must show that the action is maintainable under FRCP 23(b)(1), (2), or (3). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Here, Swamy seeks class certification only under FRCP 23(b)(3), which further requires predominance and superiority.

Swamy requests certification of the following California Class: All persons who are or have been employed by Title Source as a real estate appraiser for Title Source within the State of California at any time from March 7, 2013 (*i.e.*, within four years prior to the date on which

this action was filed) to the final disposition of this case.

### A. Numerosity.

Under FRCP 23(a)(1), numerosity is satisfied by showing that "joinder of all members is impracticable." There are at least 48 individuals that fall within the definition of the California Class (Dkt. No. 112-12 at 3). As Title Source does not dispute, numerosity is demonstrated here.

### B. Typicality.

Typicality under FRCP 23(a)(3) is shown when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Swamy performed the same job duties as the putative class members under the same compensation plan. He also received the same wage statements and worked in accordance with the same Title Source policies and procedures. Swamy's claims are therefore typical.

Neither of Title Source's arguments to the contrary is convincing. Title Source first argues that typicality is not met because Swamy's wife and daughter would (in limited circumstances) assist him with aspects of his work such as answering the phone or filling out parts of appraisal forms. Title Source also cites to declarations of appraisers who Title Source characterizes as "diametrically opposed" to Swamy's views regarding his role as an appraiser. Title Source fails to explain, however, how either issue makes Swamy uniquely vulnerable to atypical defenses.

### C. Adequacy.

Swamy and his counsel will adequately represent the class. FRCP 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This prerequisite has two parts: (1) that the proposed representative plaintiff and his counsel do not have any conflicts of interest with the proposed class; and (2) that they will prosecute this action vigorously on behalf of the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Nothing in the record indicates that Swamy or his counsel would have a conflict with other potential class members. Furthermore, both Swamy and his counsel have vigorously prosecuted this action on behalf of the California Class, and nothing in the record suggests that they will not continue to do so.

Title Source contends that there is a conflict between Swamy, his counsel, and the class because — in an effort to make it easier to certify a class — Swamy has proposed limiting the reimbursement of business expenses to fixed amounts. In particular, regardless of whether a class member's actual costs were higher, Swamy seeks reimbursement for the use of (1) personal vehicles at the IRS reimbursement rate, (2) home internet at the lowest cost plan identified by Swamy's expert, and (3) cell phone use at $85 per month. Title Source further points to Swamy's abandonment of his claims for home computer expenses and costs of appraisal software. These are minor concessions that will streamline the case and make recovery more likely. They therefore do not amount to a failure by counsel to vigorously prosecute the case.[1]

Title Source next attacks Swamy's credibility by pointing to purported inconsistencies between his deposition testimony and earlier declarations filed in this action. For example, in support of his initial motion for conditional FLSA certification, Swamy wrote in his declaration that he "believe[d] that other Staff Appraisers would be interested in recovering their unpaid overtime wages if given the opportunity," (Dkt. No. 73-3 ¶ 9), but he later testified that he was unfamiliar with the work schedules of other appraisers, had not reviewed other appraisers' pay stubs or expenses, and had not spoken with any colleagues to see whether they wanted to join the lawsuit (*see* Dkt. No. 126, Exh. 10). Contrary to Title Source, these statements are not diametrically opposed to Swamy's prior declaration.

Title Source further argues that Swamy demonstrated a lack of familiarity with this case when he conceded that he had not reviewed certain pleadings and court orders in preparation for his deposition. This argument is also unconvincing. Swamy need not have reviewed every document relevant to this action prior to his deposition to demonstrate adequacy. And, regardless, Swamy testified that he reviewed his prior declaration and answers to discovery requests.

---

[1] Title Source began reimbursing its staff appraisers for cell phone use in May 2015. Swamy does not seek reimbursement for cell phone costs after this date.

### D. Commonality and Predominance.

A class has sufficient commonality under FRCP 23(a)(2) if "there are questions of law or fact common to the class." In contrast to the less stringent standard of FRCP 23(a)(2), class certification under FRCP 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all class members in a single adjudication. *Hanlon*, 150 F.3d at 1022. As explained below, Swamy has not demonstrate that common questions will predominate his overtime compensation claim. With respect to his expense reimbursement and wage statement claims, however, commonality and predominance are met.

#### *(1) Failure to Reimburse Necessary Expenditures.*

Section 2802 of the California Labor Code requires employers to indemnify its employees for work related expenses. The elements of a claim under Section 2802 are: (1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were reasonable and necessary. In addition, the employer "must either know or have reason to know that the employee has incurred [the] expense." *Marr v. Bank of Am.*, No. 09-cv-05978, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011). According to Swamy, Title Source required staff appraisers to use their cell phones, home internet, and personal vehicles for work. Although Title Source began to automatically reimburse appraisers for cell phone use in May 2015, it did not similarly compensate appraisers for these other expenses.

Swamy's Section 2802 claim will not turn on individualized determinations and inquiries. To be sure, liability under Section 2802 depends on whether "necessary" business expenses where in fact indemnified. Here, however, Swamy points to documentary evidence of company policies — such as class members' job descriptions — to show that Title Source required appraisers to use their cell phones, home internet access, and personal vehicles for work. Through such evidence Swamy can show that certain categories of expenses were commonly incurred by members of the class. *See Dilts v. Penske Logistics, LLC,* 267 F.R.D. 625, 640 (S.D. Cal. 2010) (Judge Janis Sammartino).

5

Title Source's arguments in opposition do not raise individualized questions as to whether the putative class incurred these expenses, but rather dispute what *amount* of such expenses was necessary. This focus on variances in the amount and circumstances of expenses incurred goes to damages, not liability. Whether Title Source provided expense reimbursements or indemnification in connection with cell phone, internet, and transportation costs consistent with Section 2802 is a question common to all members of the proposed class.[2]

Nor do Title Source's objections to Swamy's damages model defeat predominance. Swamy's damages model provides for damages equal to (1) the number of miles driven by appraisers at the IRS reimbursement rate, (2) home internet at the lowest cost plan identified by Swamy's expert, and (3) cell phone use at $85 per month. With respect to the number of miles driven by appraisers, Swamy proposes a damages model based on the most efficient route that could have been taken to reach the properties inspected on a particular day (Dkt. No. 112-13). Title Source objects that this methodology limits putative class members' damages to those appraisers who used a personal vehicle (as opposed to public transportation) and ignores the actual costs incurred and distances traveled. But Swamy need not prove his damages with exact proof at the class certification stage. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017). Should individualized questions of damages ultimately render class resolution unmanageable, however, decertification of the class may be proper.

### *(2) Failure to Provide Accurate Itemized Wage Statements.*

Section 226(a) of the California Labor Code requires employers to provide accurate itemized wage statements that show, among other things, "(1) gross wages earned, (2) total hours worked by the employee . . . , [and] (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis." Where an employee is exempt from overtime payments under the administrative or professional exemptions, an itemized wage statement need not include the total hours worked. *Id.* at § 226(j)(2)(A).

---

[2] Although Title Source repeatedly describes *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 569 (2007), as "reversing class certification on reimbursement claims," the California Supreme Court instead addressed whether the trial court abused its discretion in *denying* class certification.

6

Title Source paid appraisers a base salary plus a "production compensation incentive" based on the amount of "appraisal points" earned during the pay period (Dkt. No. 112-17). Title Source accordingly issued two wage statements each pay period — one for the salary compensation and the other for the production compensation incentive (Dkt. No. 112-16). Swamy contends Title Source violated Section 226(a) in three primary ways. *First*, the two wage statements issued each pay period had inconsistent information as to the gross wages earned. *Second*, the wage statements failed to accurately list hours worked. *Third*, Title Source failed to provide sufficient information for appraisers to determine how their production compensation incentive was calculated, such as the number of appraisals completed or appraisal points earned.

Common questions will predominate in the class-wide adjudication of Swamy's wage statements claim, including whether wage statements furnished to staff appraisers permitted them to easily determine their incentive payments. Moreover, liability can be determined based on a common form of proof, namely, Title Source's uniform wage statements and testimony regarding Title Source's knowledge and intent regarding the alleged deficiencies in its wage statements. *Clemens v. Hair Club for Men, LLC*, No. 15-cv-01431, 2016 WL 1461944, at *8 (N.D. Cal. Apr. 14, 2016).[3]

Common questions will also predominate in determining whether class members were properly classified as exempt employees pursuant to the administrative or professional exemptions. To be sure, Title Source's uniform classification of staff appraisers "says little about the main concern in the predominance inquiry: the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The predominance inquiry instead properly focuses on "whether the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other

---

[3] Title Source disputes that its incentive plan is "piece rate" or that its wage statements incorrectly reported gross wages. These arguments go to the merits of Swamy's claim, not to commonality or predominance.

7

factors susceptible to common proof." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009).

In *Boyd v. Bank of America Corp.*, 300 F.R.D. 431, 442–43 (C.D. Cal. 2014) (Judge David Carter), the district court certified a class of residential appraisers in connection with similar wage-and-hour claims. The plaintiffs had presented common policies and procedures regulating the conduct of the appraisers employed by the defendant, including standardized job descriptions, compensation policies, and guidelines by which employees were to complete appraisals. In light of such policies, common questions regarding the appraisers' proper classification predominated. So too here.

On this point, Title Source attempts to distinguish *Boyd* on the ground that its staff appraisers performed other work in addition to residential appraisals, such as assisting in software design and testing, reviewing protocols of outside, non-employee appraisers, and participating in pilot programs, beta testing, and the development of propriety software. Title Source does not dispute, however, that these additional duties and responsibilities were uniformly imposed on members of the putative class. While these differences may be relevant to the determination of whether class members were properly classified as exempt, they do not render class certification inappropriate.

### *(3) Failure to Pay Overtime Compensation.*

Swamy also alleges that Title Source failed to pay overtime compensation in violation of Section 510 of the California Labor Code. Section 510 generally provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.

Certain categories of employees are exempt from these overtime provisions, including persons employed in an executive, administrative, or professional capacity. *Id.* at § 515(a). As discussed above, Swamy has shown a common question of whether Title Source properly classified its staff appraisers as exempt employees.

8

To succeed on this claim, however, Swamy must show that he and other class members worked in excess of eight hours a day or in excess of 40 hours a week. Swamy concedes that he has no record of the hours he actually worked. He instead suggests that testimony of staff appraisers be used as the sole means of determining whether class members worked overtime. Such testimony is the *exact opposite* of common proof.

Swamy does nothing to answer this concern. He points to a concession of Title Source's CEO that he "assume[d]" some appraisers worked more than 40 hours a week, but makes no showing that class members *actually* worked such hours (Dkt. No. 112-3 at 226:19–21). Moreover, while Swamy himself submits (without any records) that he (at times) worked more than 40 hours per week, he fails to demonstrate that other appraisers worked similar hours.

To be sure, staff appraisers were required to complete a minimum number of appraisals each pay period. Contrary to Swamy, however, Title Source's CEO did *not* testify that it should take approximately ten hours to complete appraisal assignments. Swamy's counsel asked whether it was his "understanding that [ ] ten hours is the average amount of time it takes to complete one appraisal report," to which he responded "no" (Dkt. No. 112-3 at 232:10–13). Moreover, Swamy's own testimony demonstrates the range of time needed to complete an appraisal is broad, taking anywhere from 30 minutes to two hours to complete an inspection and an additional two to six hours to prepare the report (Dkt. No. 112-9 at 197:24–198:17). Declarations submitted by other Title Source appraisers are in accord (*see, e.g.*, Dkt. No. 126, Putnam Decl. ¶ 24).

In a recent case, the undersigned judge certified wage-and-hour claims where room attendants in a single hotel were required to clean a minimum number of rooms per shift and the time needed to clean a room ranged between twenty to forty minutes. *Richardson v. Interstate Hotels & Resorts, Inc.*, No. 16-cv-06772, 2018 WL 1258192 (N.D. Cal. Mar. 12, 2018). Here, by contrast, a range of variables impacts the amount of time required to complete an appraisal. As just one example, the property to be inspected could be a small condominium or a large rural home with sheds and an irrigation system (Dkt. No. 126, Phillips Decl. ¶ 25). It is therefore not

9

the case that the number of appraisals completed in a given week could be used to confirm the hours worked by putative class members.

For the first time on reply, Swamy submits a chart which he contends demonstrates how many hours he worked per day (Dkt. No. 132-1). Contrary to Swamy, this chart does nothing more than list his electronic activities throughout the week. But as Swamy himself testified, he would run personal errands or do charity work between appraisals (Dkt. No. 126, Exh. 10 at 216:9–15). Swamy fails to account for the time he spent on these non-work related activities in calculating the hours he purportedly worked.

Without a showing that Swamy can prove class-wide liability via a common method of proof, individualized issues will predominate this claim. *See McKeen-Chaplin v. Provident Sav. Bank, FSB*, No. 12-cv-03035, 2013 WL 5883794, at *3 (E.D. Cal. Oct. 30, 2013) (Judge Garland Burrell, Jr.).[4]

Swamy spills much ink arguing that certification is proper because "the heart of the case" is the classification challenge and Title Source's asserted administrative and professional exemption defenses will stand or fall with respect to the entire class. To this end, Swamy again points to *Boyd*, where the plaintiff's overtime claim was certified. In *Boyd*, however, the plaintiffs had shown (and the defendant did not dispute) that members of the putative class *had* regularly worked overtime. 300 F.R.D. at 437. The parties in *Boyd* accordingly agreed that the case would largely focus on whether class members fell within the professional and administrative employee exemptions. Here, by contrast, Title Source sharply disputes that overtime was worked by the putative class members. Swamy's claim accordingly involves more than a purported misclassification. Even if members of the putative class *were* non-exempt

---

[4] Confusingly, Swamy cites to *McKeen-Chaplin*, 2013 WL 5883794, at *3 as support for his argument that certification is proper. In *McKeen-Chaplin*, however, the district court ultimately decertified the class because "determining whether all [class members] actually worked overtime [would] require an individualized inquiry into the work schedules of each class member." Swamy's other authorities get him no further. In *Metrow v. Liberty Mut. Managed Care LLC*, No. 16-cv-1133, 2017 WL 4786093, at *9 (C.D. Cal. May 1, 2017) (Judge Jesus Bernal), the class members worked substantially similar hours and had daily goals for billable hours. And the district court in *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 426 (N.D. Cal. 2011) (Judge Richard Seeborg), did not address the issue raised here, namely whether the plaintiff had a common method of proof to show that class members worked overtime.

employees, Swamy still fails to provide a common method of proving that such employees are entitled to overtime pay.

Swamy attempts to portray this snafu as an issue of damages, arguing that individualized inquiries regarding the number of hours worked are unnecessary to determine liability. Swamy is correct that individualized inquiries with respect to damages are irrelevant to the propriety of class certification in wage-and-hour actions. His authorities, however, are distinguishable. In *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013), the only individualized factor that the district court identified was the amount of pay owed. Moreover, the defendant's computerized payroll and time-keeping database would have enabled the district court to accurately calculate damages and related penalties for each claim. And, in *Jimenez v. Allstate Insurance Co.*, 765 F.3d 1161, 1165–66 (9th Cir. 2014), a common question existed based on the defendant's policy of discouraging employees from reporting overtime. Moreover, it was established that class members often worked more than eight hours per day or 40 hours per week. Here, by contrast, there is no common proof that all appraisers worked more than eight hours in a day or 40 hours in a week.

Seeking to avoid this result, Swamy contends that Title Source was required (whether or not its staff appraisers were exempt employees) to keep records of the hours worked by putative class members. At the hearing, Swamy's counsel ultimately conceded that federal law does not require employers to track hours worked by exempt employees (Dkt. No. 145 at 22:16). But because Swamy's counsel refused to make a similar concession with respect to California law, the parties submitted supplemental briefing as to whether the Labor Code requires employers to track hours worked by exempt employees (Dkt. Nos. 146–47).[5]

The parties agree that Wage Order 4-2001, issued by the Industrial Welfare Commission pursuant to its authority under the California Labor Code, is the applicable authority. They also agree that under this authority, an employer need not keep daily time records for exempt

---

[5] In support of his supplemental submission, Swamy requests judicial notice of two documents evidencing that in 2016 the minimum wage in California was $10 per hour (Dkt. No. 148). Under FRE 201(b), courts may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Swamy's request for judicial notice is accordingly **GRANTED**.

11

employees. Although Swamy concedes as much (despite his contrary position at the hearing on this motion), he now retreats to the position that employers are required to maintain time records until *affirmatively establishing* that its employees are exempt. Contrary to Swamy, while an employer bears the burden of demonstrating *on the merits* that an employee is exempt from the Labor Code's overtime requirements, the party seeking class certification bears the burden of demonstrating that the requirements of FRCP 23 are met. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

Regardless, even where an employee is unable to prove "the *precise extent*" of his uncompensated work due to an employer's failure to maintain records, he must still prove that "he has in fact performed work for which he was improperly compensated" and provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1377 (2007) (emphasis added). Here, however, even if the proper classification of putative class members were not in dispute, Swamy proposes no common method of showing that uncompensated work occurred.

This order accordingly finds that Swamy has not identified a common method of proof on a classwide basis for his overtime claim, and common questions on this claim would not predominate. Class certification of this claim and Swamy's derivative claim for unfair competition is accordingly **DENIED.**

### E. Superiority

Class certification is appropriate only if class resolution "is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). Title Source argues that resolution of the proposed class's claims would be derailed by individualized inquiries. These concerns have been addressed above. Despite the high value of the claims at issue in this case, a single proceeding in this forum is preferable and more efficient than individual proceedings. A class action would therefore be superior to individual actions for the adjudication of Swamy's expense reimbursement, wage statement, and derivative Section 17200 claims.

### 2. MOTION FOR CONDITIONAL CERTIFICATION.

Swamy additionally renews his request for conditional certification of his FLSA collective action claim, which he brings on behalf of all staff appraisers who were allegedly misclassified as exempt from overtime pay. He defines the putative collective as "all Staff Appraisers that worked for Defendant at any time from three years prior to the date the Court authorizes notice to the present." For the same reason that Swamy's overtime claim is not appropriate for class certification, he has failed to show that his FLSA claim is appropriate for collective adjudication.

Under the FLSA, employees may bring a collective action on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Ordinarily, courts in this circuit apply a two-step process to certify FLSA collective actions. *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015). At the first step, the issue is whether the putative collective should be given notice of the action. If conditional certification is granted, the second stage occurs when discovery is complete and the case is ready to be tried. The party opposing collective certification may then move for decertification, and the court engages in a more searching review.

Swamy urges application of the more lenient first-stage standard given the May 18 discovery deadline in this case. Title Source, of course, advocates the more stringent test, noting that Swamy has failed to identify any additional discovery that he would need in connection with seeking FLSA certification. This order agrees with Swamy that, given discovery is not yet closed, an analysis under the more lenient standard is appropriate. *Benedict v. Hewlett-Packard Co.*, No. 13-cv-0019, 2014 WL587135, at *7 (N.D. Cal. Feb. 13, 2014) (Judge Lucy Koh). Even under this more lenient standard, however, Swamy fails to show that conditional certification is appropriate.

In order to prevail on his compensation claim under the FLSA, Swamy must demonstrate that (1) he worked overtime without compensation and (2) Title Source knew or should have known of the overtime work. *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). To satisfy his burden at the conditional certification stage, Swamy must provide "little more than substantial allegations, supported by declarations or discovery, that 'putative

class members were together the victims of a single decision, policy, or plan.'" *Velasquez v. HSBC Finance Corp.*, 266 F.R.D. 424, 427 (N.D. Cal. 2010) (Judge Samuel Conti).

In support of his nationwide FLSA allegations, Swamy points to documents suggesting that staff appraisers performed the same primary duties for the same pay, regardless of their geographic location. He also points to a single declaration of a former appraiser who avers only that "there were weeks when [she] worked more than 40 hours." As with Swamy's testimony, however, Ms. Bright fails to provide any information regarding the extent to which *other* appraisers worked similar hours. And notably, because Ms. Bright has not worked for Title Source since October 2013, she is not even a putative member of the FLSA collective (Dkt. No. 112-11 ¶ 2). These lone testimonials are insufficient to suggest that the nearly 300 putative class members are similarly situated within the meaning of the FLSA. *Trinh v. JP Morgan Chase & Co.*, No. 07-cv-1666, 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) (Judge Thomas Whelan).

Swamy's failure to produce evidence suggesting that other putative class members worked over 40 hours a week is especially telling in light of the fact that this case has been pending for over a year and Swamy's counsel has noticed and taken nine depositions, propounded dozens of discovery requests, and received upwards of 50,000 documents in discovery (Dkt. No. 126, Kempl. Decl. ¶ 30). The renewed motion for conditional FLSA certification is accordingly **DENIED**.

**3.    TITLE SOURCE'S OBJECTIONS.**

Title Source raises three objections to Swamy's reply briefs and evidence (Dkt. No. 136). *First*, Title Source objects that Swamy's Exhibit 31, entitled "Log of Som Swamy's Weekly Tasks," lacks foundation or authentication. This order has already declined to certify Swamy's overtime compensation claim. Title Source's objection and request to strike this exhibit is accordingly **OVERRULED** and **DENIED AS MOOT**.

*Second*, Title Source objects to Swamy's reply declaration on the grounds that it amounts to improper sandbagging and contradicts his prior deposition testimony. Swamy's declaration addresses discrepancies between his handwritten notes and Title Source's records concerning

dates on which Swamy performed certain property inspections (Dkt. No. 126, Exh. 7). Swamy's explanation of these discrepancies — that he occasionally failed to update his handwritten notes to reflect changes in scheduling — is in response to arguments raised in Title Source's opposition and therefore properly raised on reply. While this order considers Title Source's objection in weighing the probative nature of the evidence, the objection is otherwise **OVERRULED**.

*Third*, Title Source objects that Swamy's reply exceeded applicable page limits (by three pages), incorporated facts and arguments submitted in earlier-filed motions, and was not filed by the applicable deadline. Title Source's request to strike these submissions is **DENIED**. Swamy's motion for leave to exceed his allowed page limits and to file his reply exhibits an hour after the deadline (Dkt. No. 139), is **DENIED AS MOOT**.

These objections were properly and timely filed pursuant to Civil Local Rule 7-3(d)(1). Swamy's request for leave to file a motion to strike Title Source's objections (Dkt. Nos. 140–141), is accordingly **DENIED**. The April 5 hearing on Swamy's motion for leave to file a motion to strike is **VACATED**.

## CONCLUSION

For the foregoing reasons, Swamy's motion for FLSA conditional certification is **DENIED**.

Swamy's motion for class certification is **GRANTED IN PART AND DENIED IN PART**. The following class is **CERTIFIED**: All persons employed by Title Source as an External Staff Appraiser in California at any time from March 7, 2013, through the present.

This class definition shall apply for all purposes, including settlement. Plaintiff Som Swamy is hereby **APPOINTED** as class representative. Swamy's counsel from Kennedy Hodges, LLP are hereby **APPOINTED** as class counsel.

By **APRIL 13 AT NOON**, the parties shall jointly submit a proposal for class notification with a plan to distribute notice — including by first-class mail — by **APRIL 30**. In crafting their joint proposal, counsel shall please keep in mind the undersigned judge's guidelines for notice to

15

class members in the "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement" (Dkt. No. 27).

**IT IS SO ORDERED.**

Dated: April 2, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE